**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **TONDALAYA DAVIS**, | **CIVIL ACTION** |
| Plaintiff, | |
| *v.* | **NO. 2:20-cv-05798-KSM** |
| **ELWYN, INC.** | |
| Defendant. | |

**MEMORANDUM**

**Marston, J.**                                                   **October 20, 2021**

Before the Court is Defendant Elwyn's Second Renewed Motion for Leave to File

Defendant's Exhibits to Its Reply Brief in Further Support of Its Motion for Summary Judgment

Under Seal, which is attached to this Memorandum.  (*See* Mot. to Seal.)  Because we write for

the benefit of the parties, who are intimately familiar with the documents and issues before us,

we include only a brief recitation of the facts.

### I.      *Background*

Plaintiff Tondalaya Davis, a former Mental Health Program Specialist for Defendant,

claims to have been subjected to a series of offensive sexual remarks and racial slurs by Patient

X, an individual receiving treatment for mental illness at Defendant's psychological care facility.

(Doc. No. 1 at 3.)  In July 2019, Patient X was "very aggressive" toward Plaintiff, but Plaintiff's

supervisor required her to continue working with Patient X.  (*Id.* at 3–4.)  Plaintiff refused to

assist Patient X and was terminated shortly thereafter.  (*Id.* at 4.)  Plaintiff brought suit against

her former employer, alleging that she was subjected to a hostile work environment and that she

was "terminated on the basis of her race and/or gender and in retaliation for her complaints in connection thereto." (*Id.*)

Defendant moved for summary judgment on August 6, 2021, (Doc. No. 23), and filed a reply brief  on August 30, 2021.[1]  (Doc. No. 29.)  Defendant seeks to seal four exhibits attached to its reply brief: (1) a video depicting Plaintiff, Patient X, and other nonparty employees and patients (Ex. P); (2) incident reports recording Patient X's behavior (Ex. Q); (3) Patient X's treatment plan, which reveals Patient X's diagnoses, symptoms, and short- and long-term treatment goals (Ex. R); and (4) daily treatment notes recorded by Defendant's employees who cared for Patient X and other patients (Ex. S).[2]  (Mot. to Seal.)  Plaintiff does not oppose Defendant's motion to seal.  The Court has conducted an *in camera* review of the exhibits and finds that a sealing order is warranted as to some, but not all.

## II.    *Legal Standard*

When a party seeks to seal judicial records, the common law presumption of the right of public access applies.  *See Leucadia, Inc. v. Applied Extrusion Techs., Inc.*, 998 F.2d 157, 164 (3d Cir. 1993) ("We believe that our earlier decisions and those in other courts lead ineluctably

---

[1] On September 7, 2021, the Court issued an Order (Doc. No. 32) denying without prejudice Defendant's original Motion for Leave to File Defendant's Reply Brief in Further Support of its Motion for Summary Judgment and Exhibits Under Seal (Doc. No. 27).  The Court explained that if Defendant sought to renew its Motion, it must "explain[] for each document" it sought to seal "[w]hy the common law presumption of access is overcome; [w]hether the First Amendment right of public access is implicated by the use of these documents in the context of a motion for summary judgment; and [t]o the extent the First Amendment is implicated, whether sealing is warranted under a constitutional inquiry." (Doc. No. 32 at 2.)  On September 23, 2021, Defendant renewed its motion and included a document-by-document analysis explaining why sealing is justified, which is attached to this Memorandum.  (*See* Mot. to Seal; Ex. A.)

[2] Defendant's initial motion to seal asked the Court to seal an additional document, Exhibit T, but Defendant's renewed motion does not include this exhibit. For the reasons stated herein, Exhibit T may include redactions of nonparty Patient names and other personal identifying information (as allowed by Local Rule 12(b)).  To the extent Exhibit T includes other redactions, Defendant must unredact and refile Exhibit T.

to the conclusion that there is a presumptive right of public access to pretrial motions of a nondiscovery nature, whether preliminary or dispositive, and the material filed in connection therewith.").  "This right antedates the Constitution and promotes public confidence in the judicial system by enhancing testimonial trustworthiness and the quality of justice dispensed by the court." *Wartluft v. Milton Hershey Sch.*, 1:16-CV-2145, 2019 WL 5394575, at *4 (M.D. Pa. Oct. 22, 2019) (cleaned up).  Because the documents will be filed as part of Defendant's summary judgment materials, they are "judicial records" to which the common law right of public access attaches.  *In re Avandia Mktg., Sales Practices & Prods. Liab. Litig.*, 924 F.3d 662, 672 (3d Cir. 2019) ("A judicial record is a document that has been filed with the court or otherwise somehow incorporated or integrated into a district court's adjudicatory proceedings." (quotation marks omitted)).

This right is not absolute and may be rebutted where an "interest in secrecy outweighs the presumption." *Id.*  To meet this burden, the party requesting the sealing order must demonstrate that the "material is the kind of information that courts will protect and that disclosure will work a clearly defined and serious injury to the party seeking closure." *Id.* (quotation marks omitted).

In addition to the common law right of access, which attaches to all judicial records, the public also has a First Amendment right of access to civil trials, which attaches to certain judicial documents. *Id.* at 673.  The First Amendment right of access presents an even higher burden than the common law right of access, and the party requesting that trial documents be sealed must overcome strict scrutiny. *Id.*  Specifically, the party must demonstrate "an overriding interest in excluding the public based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest." *Id.* (cleaned up).

It is unclear whether the First Amendment standard applies to a motion to seal summary judgment materials. *See id.* ("It remains an open question in this Circuit whether the First Amendment right of access applies to records of summary judgment proceedings."). The majority in *In re Avandia* limited its analysis to the common law test and did not analyze whether a motion to seal summary judgment materials is also subject to First Amendment scrutiny. *Id.* at 680 (following other Third Circuit cases that declined to reach the First Amendment analysis because the proponent had not overcome the common law right of access). However, the Third Circuit advised that we use "a two-prong test to assess whether the right of access attaches: (1) the experience prong asks whether the place and process have historically been open to the press; and (2) the logic prong evaluates whether public access plays a significant positive role in the functioning of the particular process in question." *Id.* Although the majority did not reach this question, Judge Restrepo, concurring in part and dissenting in part, opined that the First Amendment right of access attaches to summary judgment briefs. *See id.* at 681–84 (Restrepo, J., concurring in part and dissenting in part). The Second and Fourth Circuits have also held that the First Amendment right of public access extends to summary judgment materials. *See Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 124 (2d Cir. 2006) ("[T]here exists a qualified First Amendment right of access to documents submitted to the court in connection with a summary judgment motion."); *Rushford v. New Yorker Magazine, Inc.*, 846 F.2d 249, 253 (4th Cir. 1988) ("We believe that the more rigorous First Amendment standard should also apply to documents filed in connection with a summary judgment motion in a civil case.").

Under either the common law or First Amendment standard, when a court analyzes a request for a sealing order, it must do so on a document-by-document basis, and the proponent of

the sealing order must articulate with specificity the injury that would result if the particular document or parts of it were made public. *In re Avandia*, 924 F.3d at 673. Merely reciting the *Pansy* factors in seeking a sealing order is insufficient.[3] *Id.* at 676–77 ("[T]he *Pansy* factors are not a substitute for the common law right of access standard—which begins with the presumption of access.").

### III.   *Document-by-Document Analysis*

Defendant has moved to wholesale seal four categories of documents included in its summary judgment materials:  a video, certain incident reports concerning Patient X, Patient X's treatment plan, and daily treatment notes.  (Mot. to Seal.)  Conscious that we must perform a document-by-document review, the Court directed Defendant to prepare a chart that identifies each document sought to be sealed, the nature of the information contained therein, and the

---

[3] In analyzing a motion for protective order under Rule 26(c), the Court considers the *Pansy* factors, which ask whether:

1.  Disclosure of the information will violate any private interests;

2.  Disclosure will cause a party embarrassment;

3.  The information is being sought for a legitimate purpose or for an improper purpose;

4.  The sharing of information among the litigants will promote fairness and efficiency;

5.  Confidentiality is being sought over information important to public health and safety;

6.  A party benefitting from the order of confidentiality is a public entity or official; and

7.  The case involves issues important to the public.

*In re Avandia*, 924 F.3d at 671.  Although they provide useful guidance when the court balances the public versus private interests under Rule 26(c), the *Pansy* factors "are not sufficiently robust for assessing the public's right to access judicial records." *Id.* at 676–77; *see also In re Application of Storag Etzel GmbH*, Misc. C.A. No. 19-mc-209-CFC, 2020 WL 2949742, at *9 (D. Del. Mar. 25, 2020) ("In both substance and procedure, the burdens that must be overcome to justify the sealing of judicial records under the common law are dramatically less pliant than the factors to be weighed under *Pansy* in deciding whether a protective order is warranted.").  And neither the second *Pansy* factor nor the third factor are relevant in deciding whether to enter a sealing order.  *In re Avandia*, 924 F.3d at 676.

justification for the redaction under both the common law and First Amendment standards. (Doc. Nos. 32, 33).

We consider each category of materials in turn.

### A.    Video

First, Defendant moves to seal a video that shows Plaintiff and Patient X, as well as additional employees and patients who are not parties to this litigation.  (Ex. A at 2–4.) Although taken from a surveillance camera, the video clearly depicts Plaintiff, Patient X, approximately five other patients, and approximately five nonparty employees.  (Doc. No. 29-5.) Defendant argues that this video should be sealed to protect the patients' "important privacy interest in their own medical and mental health records."  (Ex. A at 2.)

Allowing access to the video would enable the public to identify Patient X and other nonparty patients and reveal that they are suffering from mental illness and receiving treatment at a psychological institution.  The Court finds this video contains "the kind of information that courts will protect and that disclosure will work a clearly defined and serious injury," such that the common law presumption of access is overcome.

Nonparties' medical information is precisely "the kind of information that courts will protect."  *See Moore v. CVS Rx Servs., Inc.*, 660 F. App'x 149, 153 n.4 (3d Cir. 2016) (granting motion to file medical information under seal "because . . . the right to privacy outweighs the public's right of access to materials filed in litigation"); *United States v. McGill*, No. 12-cr-112, 2016 WL 8716240, at *5 n.3 (E.D. Pa. May 13, 2016) (granting motion to seal document containing nonparty "patients' names and medical information"); *Hicks v. Wegmans Food Mkt.*, No. 09-cv-0624, 2011 WL 499368, at *1 n.2 (D.N.J. Feb. 10, 2011) (granting motion to seal

references to nonparty's medical history because "there is . . . a legitimate interest in maintaining the confidentiality of this personal information in order to protect the non-party's privacy").

Second, disclosure of the video "will work a clearly defined and serious injury" to the privacy interests of nonparties. *See Prall v. Ricci*, No. 10-cv-1228, 2014 WL 12803521, at *2 (D.N.J. Mar. 13, 2014) ("[B]ecause the disclosure of Plaintiff's medical history is a clearly defined serious injury sufficient to support the sealing of the documents, the Court grants the County Defendants' motion to seal." (cleaned up)). The video depicts Plaintiff and several other of Defendant's employees tending to Patient X and other patients under Defendant's care. (Doc. No. 29-5.) Were this video disclosed, the public would learn that the patients featured were receiving treatment in a psychological care institution, a fact which those patients have an interest in keeping private. Accordingly, we find that Defendant has overcome the common law presumption of access as to the video.

But that does not end the analysis. We must also determine whether Defendant has overcome its constitutional burden.

Assuming that the First Amendment is implicated at summary judgment, we find that the sealing of the video satisfies strict scrutiny. To overcome the First Amendment hurdle, Defendant must demonstrate "an overriding interest in excluding the public based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest." *In re Avandia*, 924 F.3d at 673 (cleaned up). Sealing is essential to protecting the patients' right to privacy. The video depicts Plaintiff's interactions with *nonlitigants*, and disclosure of the video would reveal the patients' sensitive medical information—namely, the fact of their treatment in a psychological facility.

Wholesale sealing is the least restrictive way to protect the nonparties' privacy interests. The video does not have audio but shows Plaintiff, other staff members, and patients interacting in a narrow corridor.  (Doc. No. 29-5.)  Because there is no audio and, at times, the patients and staff get close to one another, manipulating the video to cover the nonparty patients' images would make the video unintelligible.  Courts have recognized that wholesale sealing is an appropriate way to protect private or sensitive information contained in a video where it is not feasible to redact or otherwise hide the protected information.  *See, e.g.*, *McFadden v. Dalmasi*, 837 F. App'x 135, 138 (3d Cir. 2020) (granting motion to seal, in its entirety, video taken immediately following incident that was subject of litigation); *Asmar v. BNSF Ry. Co.*, No. 19-cv-1810, 2021 WL 536465, at *2 (E.D. Cal. Jan. 8, 2021) (finding that sealing video wholesale was "narrowly tailored in that it relates only to the subject video and images from the video" and that "[t]here are no less restrictive means to maintain the video as confidential while at the same time using it for the purpose of a motion for summary judgment").

For these reasons, the motion to seal the video is granted.

### B.    *Incident Reports*

Defendant also asks that we seal three reports detailing behavioral incidents involving Patient X.  (Ex. A at 4–5.)  These reports describe the events leading up to the incidents, the incidents themselves (in all three instances, physical and/or verbal altercations with other patients or staff), and staff members' responses thereto.  (Doc. No. 29-4.)  The reports also contain Patient X's name, social security number, and date of birth and the names of several of Defendant's employees.  For the reasons below, the Court denies Defendant's motion to seal these reports wholesale but will allow Defendant to redact Patient X's personal identifying information.

8

The Court finds that the common law presumption of access is overcome as to Patient X's personal identifying information in the incident reports.[4]  This is "the kind of information that courts will protect."  *See Wartluft*, 2019 WL 5394575, at *3 (granting intervenor's motion to unseal medical records, "subject to the redaction of names and/or identifying information of third parties in order to protect [nonparty] individuals' privacy interests"); *Johnson v. Hastings*, No. 13-cv-6974, 2018 WL 621289, at *3 (D.N.J. Jan. 30, 2018) ("Plaintiff's right to privacy in his medical records outweighs the public right to access documents containing intimate facts of a personal nature." (internal citations and quotations omitted)).

Disclosure of the Patient X's personal identifying information will also "work a clearly defined and serious injury."  Such disclosure would reveal that he is receiving treatment in a psychological care facility and would allow the public to know that he instigated at least three incidents of verbal and/or physical harassment while in Defendant's care.  *Briglia v. Ameritas Life Ins. Corp.*, No. 14-cv-7968, 2015 WL 4314062, at *3 (D.N.J. July 4, 2015) (holding that disclosure of plaintiff's medical information would "work a clearly defined and serious injury" where the plaintiff claimed that he would "be embarrassed, and potential employment opportunities compromised, if his condition were publicly disclosed").

The Court also finds that Patient X's right to privacy overcomes the public's First Amendment right to access the incident reports.  As discussed above, closure of Patient X's personal identifying information in the context of these reports is "essential to preserve higher values."  Patient X is not party to this litigation, and, if this information is disclosed, the public

---

[4] The reports also contain staff members' identifying information; however, Defendant has not overcome the common law presumption of access with respect to that information.  Even though this is the kind of information courts protect, Defendant has failed to identify—and the Court is unable to ascertain—how disclosure of the staff members' identifying information in connection with these reports would "work a clearly defined and serious injury."

will learn about Patient X's treatment for mental illness, including Patient X's sensitive (and potentially embarrassing) behavioral outbursts.  Moreover, Patient X's identity is irrelevant to the substance of these reports, which Defendant relies on to show Patient X's history of aggression towards male and female staff members, not just Plaintiff.  (Doc. No. 29 at 7.)  Given the collateral nature of Patient X's personal identifying information, closure only marginally and immaterially affects the public's right to access the materials filed in connection with this judicial proceeding.  *See Mosaid Techs. Inc. v. LSI Corp.*, 878 F. Supp. 2d 503, 510 (D. Del. 2012) (allowing redactions of confidential financial and licensing information that was "largely incidental to the substantive issues in th[e] case").

Redactions are the most narrowly tailored way to protect Patient X's privacy interest while allowing the public to access these judicial records.  Defendant has requested the Court seal these reports wholesale because, even if Patient X's identifying information is redacted, "the surrounding details and circumstances included in the reports would enable members of the public to potentially identify the individuals involved in the incidents."  (Ex. A at 4.)  The Court disagrees.  Other than Patient X's name, date of birth, and social security number, the incident reports do not include any information by which the public could identify Patient X.  Detail on the location of the incident or staff's response is not enough for the public to identify Patient X.

Where, as here, redactions adequately protect a nonparty's interest in privacy, wholesale sealing is not the least restrictive means to protect the interests at stake.  *See Del Nero v. NCO Fin. Sys., Inc.,* No. 06-cv-4823, 2021 WL 2375892, at *2 (E.D. Pa. June 10, 2021) ("[W]here possible, parties should propose redactions, rather than placing a whole document under seal."); *Wartluft v. Milton Hershey Sch. & Sch. Trust*, No. 16-cv-21454, 2020 WL 1124771 (M.D. Pa. Mar. 6, 2020) (granting motion to unseal medical records of nonparty patients "subject to the

10

redaction of the names and/or identifying information of third-parties in order to protect those

individuals' privacy interests"); *Costa v. County of Burlington*, No. 07-cv-904, 2010 WL

11566091, at *2 (D.N.J. July 7, 2011) ("Finally, by redacting the documents—as opposed

to sealing the exhibits wholesale—Costa has used the least restrictive means available.").

Redactions will protect Patient X's privacy while allowing the public access to incident reports

that explain the behavior Patient X directed at staff members other than Plaintiff.

    For these reasons, Defendant's motion to seal the incident reports is denied, and

Defendant is directed to redact Patient X's personal identifying information.

    **C.**    ***Patient X's Behavior Plan***

    Next, Plaintiff asks the Court to seal Patient X's behavior plan.  (Ex. A at 5–6.)  The

behavior plan lists Patient X's diagnoses, describes his behavioral tendencies (including negative

tendencies, such as bouts of aggression), and recommends a plan to treat Patient X's mental

illnesses.  (Doc. No. 29-3.)  The behavior plan identifies Patient X's name and date of birth.  (*Id.*)

For the reasons discussed below, the Court denies Defendant's motion to seal Patient X's

behavior plan in its entirety but again will direct Defendant to redact Patient X's identifying

information throughout the plan.

    The Court finds that Patient X's interest in keeping the personal information included in

the behavior plan private overcomes the common law presumption of access.[5]  As discussed

above, medical information, such as information regarding Patient X's mental illnesses, is

exactly "the kind of information that courts will protect."  *See Pahlavan v. Drexel Univ. College*

---

[5] The behavior plan also lists one staff member's name; however, Defendant again has not overcome the common law presumption of access with respect to that information.  Even though this is the kind of information courts protect, Defendant has failed to identify—and the Court is unable to ascertain—how disclosure of that staff member's name would "work a clearly defined and serious injury."

*of Medicine*, 438 F. Supp. 3d 404, 407 n.1 (E.D. Pa. 2020) (granting plaintiff's request to redact certain portions of an opinion "that reflect communications with and impressions by Plaintiff's therapists"); *Johnson*, 2018 WL 621289, at *3 ("Plaintiff's right to privacy in his medical records outweighs the public right to access documents containing intimate facts of a personal nature." (internal citations and quotations omitted)).

Disclosure of Patient X's personal identifying information in the behavior plan will also "work a clearly defined and serious injury."  Disclosure would reveal that Patient X is receiving treatment in a psychological care facility, his diagnoses, and his treatment plan, and could potentially cause him embarrassment.  *Briglia*, 2015 WL 4314062, at *3 (holding that disclosure of plaintiff's medical information would "work a clearly defined and serious injury" where plaintiff claimed that he would "be embarrassed, and potential employment opportunities compromised, if his condition were publicly disclosed").

The Court also finds that the interests associated with sealing Patient X's name and date of birth in the behavior plan overcome the First Amendment right to access.  As discussed above, Patient X is not a party to this litigation, and disclosure of his name in connection with these reports would reveal his mental health diagnoses and treatment plan.  Further, Defendant relies on the behavior plan to prove that Patient X suffered from mental illnesses and regularly confronted members of Defendant's staff.  (Doc. No. 29 at 9.)  Patient X's name is merely collateral information, the redaction of which will not materially affect the public's access to these materials.  *McCowan v. City of Philadelphia*, No. 19-cv-3326, 2021 WL 3737204, at *4 (E.D. Pa. Aug. 24, 2021) ("Given the collateral nature of [personal identifying information included in a police report], its redaction only marginally affects the public's right to access materials filed in relation to judicial proceedings.").

12

Defendant has asked the Court to seal the behavior plan in its entirety because, "[e]ven with redactions, [it] contains specific personal information which members of the public could use to determine the identity of Patient X." (Ex. A at 6.) But wholesale sealing is not narrowly tailored in this instance. Although the behavior plan includes notes about Patient X's diagnoses and behavioral outbursts, nothing in the behavior plan other than Patient X's name and date of birth would allow the public to learn Patient X's identity.

Redacting Patient X's identifying information is the least restrictive means available to protect Patient X's privacy interests. *See Del Nero*, 2021 WL 2375892, at *2 ("[W]here possible, parties should propose redactions, rather than placing a whole document under seal."); *Wartluft*, 2020 WL 1124771, at *2 (granting motion to unseal medical records of nonparty patients "subject to the redaction of the names and/or identifying information of third-parties in order to protect those individuals' privacy interests"); *Costa*, 2010 WL 11566091, at *2 ("Finally, by redacting the documents—as opposed to sealing the exhibits wholesale—Costa has used the least restrictive means available."). Redactions will protect Patient X's identity while allowing the public to review the behavior plan and understand the nature of Patient X's mental illnesses.[6]

---

[6] Defendant also argues that wholesale sealing is appropriate because it "is charged with protecting Patient X's confidential information, as well as all their patients' medical information from dissemination to the public by [the] Health Insurance Portability and Accountability Act of 1996 ('HIPAA')." (Ex. A at 5–6.) Under HIPAA, however, medical providers are permitted to disclose patients' medical records so long as they redact individually identifiable information. *See Orchestrate HR, Inc. v. Blue Cross & Blue Shield of Kan., Inc.*, No. 19-cv-4007, 2021 WL 1339084, at * 1–2 (D. Kan. Apr. 9, 2021) (denying plaintiff's motion to seal nonparty medical records which contained "Protected Health Information protected by HIPAA" in their entirety but ordering defendant to redact patient names and other identifying information in those records); *cf. Haynes v. Smith*, No. 03-cv-3080, 2005 WL 8174793, at *2 (D.N.J. Apr. 5, 2005) ("To the extent F.P.'s records do not contain . . . individual identifiers or such identifiers may be redacted, then, HIPAA would not preclude Defendants from producing the medical records absent F.P.'s consent.").

For these reasons, Defendant's motion to seal the behavior plan in its entirety is denied, and  Defendant is directed to redact Patient X's personal identifying information.

### D.      *Employee Notes*

Finally, Defendant asks the Court to seal notes taken by nonparty employees who treated Patient X and other mentally ill patients in Defendant's care.  (Ex. A at 6–7.)  The notes include detail on medications, treatment plans, and behavioral concerns pertaining to many of the patients under Defendant's care, not just Patient X.  (Doc. No. 29-2.)  For the reasons below, the Court denies Defendant's motion to seal the notes wholesale but directs Defendant to redact patient names and initials from the notes.

The nonparty patients' right to privacy in connection with the notes overcomes the common law presumption of access.[7]  Courts will protect nonparties' medical information.  *See Wartluft*, 2019 WL 5394575, at *3 (granting intervenor's motion to unseal medical records, "subject to the redaction of names and/or identifying information of third parties in order to protect [nonparty] individuals' privacy interests"); *Johnson*, 2018 WL 621289, at *3 ("Plaintiff's right to privacy in his medical records outweighs the public right to access documents containing intimate facts of a personal nature." (internal citations and quotations omitted)).  There is nonparty patient medical information on almost every page of the notes, including records of their medication intake, behavior, and daily treatment plans.  (Doc. No. 29-2.)

Disclosure of the notes, and, in turn, nonparty patients' medical information, will "work a clearly defined and serious injury."  If this information is disclosed, the public could identify the patients and would learn that they are suffering from and being treated for mental illnesses.

---

[7] The notes also include staff members' names; however, as with the prior two categories of documents, Defendant has not overcome the common law presumption of access with respect to that information.  *See supra* n.4, 5.

Disclosure of this sensitive and potentially embarrassing information would cause serious injury to the patients. *Briglia*, 2015 WL 4313062, at *3 (holding that disclosure of plaintiff's medical information would "work a clearly defined and serious injury" where plaintiff claimed that he would "be embarrassed, and potential employment opportunities compromised, if his condition were publicly disclosed").

The patients' right to privacy also overcomes the right to access afforded by the First Amendment. Defendant cites the notes to demonstrate that patients other than Patient X had behavioral issues and refused their medication. (Doc. No. 29 at 4.) The patients' identifying information is collateral to the substance of the notes, and even if the patients' names are redacted, the public will still have access to the germane portions of these notes. *See Mosaid Tech. Inc.*, 878 F. Supp. 2d at 510 (allowing redactions of confidential financial and licensing information that was "largely incidental to the substantive issues in th[e] case").

Defendant has asked the Court to seal these documents in their entirety, arguing that "redactions do not fully protect Elwyn patients from identification because of the surrounding details and identifying information." (Ex. A at 7.) But, other than the patients' names and initials, the notes do not contain information that would allow the public to identify the patients. (Doc. No, 29-2.) The notes do not discuss the patients' physical appearances or biographical information; they simply list the patients who refused their medicine, describe behavioral outbursts, and include the schedule for the day. (*Id.*) Accordingly, wholesale sealing is *not* the least restrictive way to ensure the patients' privacy—redactions are. *See Del Nero*, 2021 WL 2375892, at *2 ("[W]here possible, parties should propose redactions, rather than placing a whole document under seal."); *Wartluft*, 2020 WL 1124771, at *2 (granting motion to unseal

medical records of nonparty patients "subject to the redaction of the names and/or identifying information of third-parties in order to protect those individuals' privacy interests").

For these reasons, Defendant's motion to seal the notes is denied, and Defendant is directed to redact the patient's names, initials, and any other personal identifying information included therein.

## IV.    *Conclusion*

For the reasons discussed above, the motion to seal is granted in part and denied in part. An appropriate order follows.

16

**IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | | |
|---|---|---|---|
| TONDALAYA DAVIS, | | : | |
| | Plaintiff, | : | |
| | | : | NO.:   20-CV-5798 |
| | | : | |
| vs. | | : | CIVIL ACTION - LAW |
| | | : | |
| ELWYN, INC. | | : | |
| | Defendant. | : | |

## <u>ORDER</u>

AND NOW, this _____ day of _____, 2021,  upon consideration of Defendant, Elwyn's Renewed Motion for Leave to File Defendant's Exhibits to its Reply Brief in Further Support of Defendant's Motion for Summary Judgment Under Seal, it is hereby **ORDERED** and **DECREED** that Defendant's Motion for Leave to File Under Seal is **GRANTED**.

Defendant's Exhibits to its Reply Brief in Further Support of Defendant's Motion for Summary Judgment shall hereby be filed under seal.

_____
                                                                                              **J.**

**IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF PENNSYLVANIA**

TONDALAYA DAVIS,                  :
                    Plaintiff,    :
                                  :        NO.:   20-CV-5798
                                  :
          vs.                     :        CIVIL ACTION - LAW
                                  :
ELWYN, INC.                       :
                    Defendant.    :

<u>**DEFENDANT, ELWYN'S RENEWED MOTION FOR LEAVE TO FILE
DEFENDANT'S EXHIBITS TO ITS REPLY BRIEF IN FURTHER SUPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT UNDER SEAL**</u>

Pursuant to Local Rule 5.1.5, Defendant, Elwyn (incorrectly identified as Elwyn, Inc.), respectfully requests that the Court enter an order permitting them to file Defendant's Exhibits to its Reply Brief in Further Support of Defendant's Motion for Summary Judgment under seal.  In support of this Motion, Defendant states as follows:

1.   On August 6, 2021, Defendant, Elwyn (hereinafter referred to as "Elwyn") filed its Motion for Summary Judgment and Statement of Undisputed Facts, ECF No. 23, in accordance with the Court's Scheduling Order.

2.   Plaintiff filed her Response in Opposition to Defendant's Motion for Summary Judgment and Counterstatement of Undisputed Material Facts, ECF No. 25, (hereinafter referred to as "Plaintiff's Response") on August 20, 2021.

3.   Elwyn filed its Motion for Leave to File Defendant's Reply Brief in Further Support of its Motion for Summary Judgment and Exhibits Under Seal, ECF No. 27, on August 27, 2021.

4.   Pursuant to a telephonic status conference with Plaintiff's counsel and the Court on September 7, 2021, this Court denied Defendant's Motion, but allowed Defendant to renew its Motion to File Under Seal addressing the factors set forth in *In re Avandia Mktg., Sales Pracs. &*

*Prods. Liab. Litig.*, 924 F.3d 662, 672–73 (3d Cir. 2019) and including a chart identifying and analyzing each document to be filed under seal. *See* Court's September 7, 2021 Order, ECF No. 32.

5.   Elwyn now seeks to renew it's Motion for Leave to File its Exhibits to its Reply Brief in Further Support of Defendant's Motion for Summary Judgment Under Seal in order to address the many misstatements of fact and misapplications of law raised in Plaintiff's Response in Opposition to Defendants' Motion for Summary Judgment while also protecting Elwyn's clients' private medical information.

6.   As stated in its original Motion, in order to fully address and concretely disprove certain novel allegations and arguments asserted in Plaintiff's Response, Elwyn must now include information in its Reply Brief and Exhibits relating to confidential medical information of non-party Elwyn patients.

7.   Elwyn submits that there is good cause for the Court to permit it to file Defendant's Exhibits to its Reply Brief under seal, as they relate to the identities of Elwyn patients and confidential medical records and information that is protected by Elwyn's patients' constitutional right to privacy, the Health Insurance Portability and Accountability Act, and that would not otherwise be available to the public.

8.   The *Avandia* court distinguished between the factors that the district court must consider when determining protecting discovery materials pursuant to Federal Rule of Civil Procedure 26(c) and the factors that the district court may consider when determining whether to allow documents to be filed on the Court's docket under seal, implicating "the common law's presumptive right of access to judicial materials and the First Amendment right of access to civil trials." *Avandia*, 924 F.3d at 672–73.

9.   A common law right of access—including the right to attend court proceedings, the right to inspect and copy public records, and the right to inspect and copy judicial records— attaches "to judicial proceedings and records" in both criminal and civil cases. *Id.* (quoting *Goldstein v. Forbes* (*In re Cendant Corp.*), 260 F.3d 183, 192 (3d Cir. 2001)).

10. Although there is a "strong presumption of openness," the court may file judicial records under seal where there are "compelling, countervailing interests to be protected." *Id.* (quoting *Miller v. Ind. Hosp.*, 16 F.3d 549, 551 (3d Cir. 1994)); *see also In re Cendant Corp.*, 260 F.3d at 194.

11. To rebut the presumption of openness, the moving party must show "that the material is the kind of information that courts will protect and that disclosure will work a clearly defined and serious injury to the party seeking closure." *Avandia*, 924 F.3d at 672 (quoting *Miller*, 16 F.3d at 551).

12. In addition, the public and press have the right of access to civil trials as established by the First Amendment of the Constitution of the United States.

13. However, "the right of access to civil trials is not absolute." *Publicker Indus., Inc. v. Cohen*, 733 F.2d 1059, 1061 (3d Cir. 1984).

14. To determine whether the right of access attaches to certain documents or proceedings, the court uses a two prong approach: "(1) the experience prong asks whether the place and process have historically been open to the press; and (2) the logic prong evaluates whether public access plays a significant positive role in the functioning of the particular process in question." *Avandia*, 924 F.3d at 673 (quoting *N. Jersey Media Grp. Inc. v. U.S.*, 836 F.3d 421, 429 (3d Cir. 2016)) (internal citations omitted).

15. Once the court has determined that the right of access applies, "there is a presumption that the proceedings will be open to the public." *Publicker Indus.*, 733 F.2d at 1073.

16. "The party seeking to seal judicial records may rebut the presumption of openness mandated by the First Amendment if the party demonstrates "an overriding interest [in excluding the public] based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest." *Avandia*, 924 F.3d at 673 (quoting *Publicker Indus.*, 733 F.2d at 1073).

17. For the purposes of this motion, Defendant concedes that the First Amendment right of access to civil trials applies to summary judgment filings and proceedings. *See id.* at 679–80 (declining to "define the parameters of the First Amendment right" in the context of summary judgment documents and proceedings).

18. In balancing the *Avandia* factors, there is more than sufficient important and countervailing interests to protect the confidential medical information relating to, among other things, diagnoses and medications administered to non-party Elwyn clients included in Elwyn's Reply Brief and Exhibits. *See* Defendant's Document Review of Documents to Be Filed Under Seal, attached hereto as Exhibit "A."

For any and all of the aforementioned reasons, Defendants respectfully request that the Court grant the Defendant's Motion for Leave to File Defendant's Exhibits to its Reply Brief in Further Support of its Motion for Summary Judgment Under Seal and issue the proposed Order accompanying this Motion.

Respectfully submitted,

**MARSHALL DENNEHEY WARNER COLEMAN & GOGGIN**

Dated:  <u>September 23, 2021</u>                    By:_____

JOHN P. GONZALES, ESQUIRE
Attorney ID No. 71265
2000 Market Street, Suite 2300
Philadelphia, PA 19103
P: (215) 575-2871
E-mail:  jpgonzales@mdwcg.com
*Attorney for Defendant, Elwyn, Inc.*

**IN THE UNITED STATES DISTRICT COURT FOR**
**THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | | |
|---|---|---|---|
| TONDALAYA DAVIS, | | : | |
| | Plaintiff, | : | |
| | | : | NO.:   20-CV-5798 |
| | | : | |
| vs. | | : | CIVIL ACTION - LAW |
| | | : | |
| ELWYN, INC. | | : | |
| | Defendant. | : | |

## <u>CERTIFICATE OF SERVICE</u>

I, JOHN P. GONZALES, ESQUIRE, do hereby certify that on the date listed below, I caused a true and correct copy of Defendant's Renewed Motion for Leave to File Under Seal, was electronically filed with the Court and available for viewing and downloading from the ECF System.

MARSHALL DENNEHEY WARNER
COLEMAN & GOGGIN

Dated: <u>September 15, 2021</u>    By:_____

JOHN P. GONZALES, ESQUIRE
Attorney ID No. 71265
2000 Market Street, Suite 2300
Philadelphia, PA 19103
P: (215) 575-2871/
F: (215) 575- 0856
E-mail:  jpgonzales@mdwcg.com
*Attorney for Defendant, Elwyn*

# Exhibit A

**IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | | |
|---|---|---|---|
| TONDALAYA DAVIS, | : | | |
| | Plaintiff, | : | |
| | | : | NO.:   20-CV-5798 |
| | | : | |
| vs. | | : | CIVIL ACTION - LAW |
| | | : | |
| ELWYN, INC. | | : | |
| | Defendant. | : | |

**DEFENDANT, ELWYN'S DOCUMENT REVIEW PURSUANT TO THIS COURT'S
SEPTEMBER 7, 2021 ORDER**

| Bates Range | Common Law Analysis | First Amendment Analysis |
|---|---|---|
| Exhibit P (video) | Defendant's Exhibit "P" is a video that depicts Patient X and Plaintiff, among other Elwyn non-party employees and patients, and directly contradicts Plaintiff's testimony relating to Plaintiff's alleged "sexual assault." Allowing public access to the video would enable members of the public to be able to identify clearly visible non-party patients who were or are under Elwyn's care and determine that they suffer from severe mental health issues based on other Court filings. Elwyn has a statutory duty to keep its patient's information confidential. Pennsylvania and Third Circuit courts have long held that individuals hold an important privacy interest in their own medical and mental health records. *See Doe v. Delie*, 257 F.3d 309, 314–15 (3d Cir. 2001); *see, e.g.*, *In re The June 1979 Allegheny County Investigating Grand Jury*, 490 Pa. 143, 415 A.2d 73, 77–78 (1980) ("Disclosure of confidences made by | The First Amendment right of access to civil trials is not absolute. *See In re Avandia Mktg., Sales Pracs. & Prods. Liab. Litig.*, 924 F.3d 662, 673 (3d Cir. 2019). Defendant's Exhibit "P" is the kind of information that courts will protect and disclosure will work serious injury on non-party patients of Elwyn. As previously discussed, it is well established that individuals hold an important privacy interest in their own medical records and information, which fundamentally includes an interest in protecting their identities as individuals receiving medical or mental health services in the first place. The Supreme Court of the United States has long held that the right to individual privacy is rooted in the Constitution. *Whalen v. Roe*, 429 U.S. 589, 599-600 (1977); *Griswold v. Connecticut*, 381 U.S. 479, 484–86 (1965). The In addition, the Pennsylvania Supreme Court has explicitly held that the |

a patient to a physician, or even of medical data concerning the individual patient could, under certain circumstances, pose such a serious threat to a patient's right not to have personal matters revealed that it would be impermissible under either the United States Constitution or the Pennsylvania Constitution.").

No interest beyond the presumption of openness exists to prevent the video from being filed under seal. Plaintiff merely bring claims based on her own alleged discrimination and harassment in the workplace. There are no claims of fraud, medical malpractice or any other allegations that would weigh in favor of public access to a non-party's private medical information.

Public access to the video would violate Elwyn's patients' compelling right to privacy and confidentiality and therefore, Exhibit P of Defendant's Reply Brief should be filed under seal.

Pennsylvania Constitution protects an individual's right to privacy. *See, e.g.*, *Denoncourt v. Commonwealth State Ethics Commission*, 504 Pa. 191, 470 A.2d 945 (1983).

Public access to the video would allow individuals unrelated to Plaintiff's personal employment discrimination and harassment claims to peer into Elwyn's locked wing for patients with severe mental health diagnosis and enable the public to identify non-party Elwyn patients. The identification of Elwyn's patients' would specifically injure those non-party individuals and violate their constitutionally protected rights to privacy.

The video is only being used to demonstrate unbiased and uncensored evidence that directly contradicts Plaintiff's newly raised allegations that Patient X "sexually assaulted" her during her shift. As such, the video is essential to supporting Defendant's Motion for Summary Judgment. Moreover, Elwyn does not possess any technology that would allow it to blur or obscure the faces of individuals depicted in the video, and obtaining such technology would put a large financial burden on Elwyn. Therefore, no less restrictive way exists to protect Elwyn's patients than filing Exhibit P under seal.

Accordingly, Elwyn's non-party patients' constitutionally protected interest in their privacy is an overriding interest to public access

| | | |
|---|---|---|
| | | and Exhibit P of Defendant's Reply Brief should be filed under seal. |
| Elwyn 175-181 | Defendant's Exhibit "Q" contains three separate, but related incident reports filed at Elwyn relating to Patient X's behavior. Although the names of individuals patients and employees are redacted, the surrounding details and circumstances included in the reports would enable members of the public to potentially identify the individuals involved in the incidents. In each incident, Patient X's behavior is specifically outlined, including information related to his mental illness treatment plan and medications. Exhibit Q is being offered to specifically rebut Plaintiff's allegations that Patient X's behavior was limited or directed towards her because of her race or gender and demonstrate that Patient X, was, indeed, severely mentally ill.<br><br>Allowing public access to these incident reports would specifically injure Patient X, and other Elwyn patients by enabling members of the public to learn their identities, and Patient X's treatment plan and medication use. The Third Circuit has held, "[t]here can be no question that ... medical records, which may contain intimate facts of a personal nature, are well within the ambit of materials entitled to privacy protection. Information about one's body and state of health is matter which the individual is ordinarily entitled to retain with the private enclave where he may lead a private life." *U.S. v. Westinghouse Elec.* | Closure of Defendant's Exhibit "Q" is essential to protect the constitutionally protected right of privacy of non-party Elwyn patients and is narrowly tailored to protect those privacy interests. The incident reports contained in Exhibit Q are filled with personal identifiers, private behavioral plan and treatment information related to Patient X's mental illnesses and enough information related to the circumstances of each incident that members of the public could determine Patient X's identity or other Elwyn non-party patients' and employees' identities. As previously discussed, Pennsylvania and Third Circuit courts have consistently acknowledged an individuals important privacy interest in their medical information. *See Westinghouse Elec. Corp.,* 638 F.2d at 577. "[T]here is a recognized privacy interest sought to be protected in . . . the nature of freedom from disclosure of personal matters; and it is constitutionally based." *Denoncourt*, 504 Pa. at 198.<br><br>Like Exhibit P, Exhibit Q is being produced to contradict Plaintiff's specific and novel arguments made in her Response in Opposition to Defendant's Motion for Summary Judgment relating to Patient X's diagnosis and whether Patient X's behavior was directed towards Plaintiff based on her race or gender. Elwyn does not consider Exhibit Q to be responsive or even |

| | | |
|---|---|---|
| | *Corp.,* 638 F.2d 570, 577 (3d Cir. 1980) (internal quotations omitted). While these documents are not strictly "medical records" in the traditional sense, they are records maintained by Elwyn in their capacity as care givers to their mentally ill patients and used to manage patients' treatment, medications, and diagnosis.<br><br>The risk of Elwyn's patients' identities and private medical information becoming public is a specific injury that countervails the public's common law right of access. Therefore, Patient X and additional Elwyn patients' constitutionally protected privacy interests in keeping their identities and medical information protected outweighs the presumption of openness in this case and Exhibit Q of Defendant's Reply Brief should be filed under seal. | relevant to Plaintiff's individual claims under Title VII. Again, Elwyn notes that Plaintiff does not bring any claims of fraud, medical negligence, or medical malpractice which might make these documents of public interest. However, Plaintiff's baseless and meritless assertions, made purely in an attempt to create a genuine dispute of material fact and avoid Summary Judgment, cannot be adequately disproved without Exhibit Q and Defendant's other exhibits to its Reply Brief.<br><br>Closure of the incident reports is essential to preserving the higher value of Elwyn's patients' constitutionally protected privacy interests and therefore, Exhibit Q of Defendant's Reply Brief should be filed under seal. |
| Elwyn 165-168 | Defendant's Exhibit "R" contains a relevant portion of Patient X's Behavior Plan, created by an Elwyn Learning Behavioral Specialist, which includes Patient X's multiple diagnoses, problem behaviors, statements made by Patient X, and other personal indicator information related to Patient X and his mental health treatment. Even where Patient X's name, date of birth, family member names, and Elwyn employee names are redacted, Exhibit R contains specific personal details which risks the public identification of non-party patient, Patient X. As with all documents on this list, allowing public access to Patient X's Behavior Plan would risk serious injury to Patient X's constitutionally protected right to | As described in Defendant's "Common Law Access" argument, Defendant's Exhibit "R" contains highly confidential and sensitive personal medical information related to Patient X, including diagnoses, treatment, and other personal identifying information. Patient X has a right of privacy to his own medical information and records as protected by the Pennsylvania Constitution and the Constitution of the United States of America. In addition, Elwyn is charged with protecting Patient X's confidential information, as well as all their patients' medical information from dissemination to the public by law. *See, e.g.*, Health Insurance Portability and Accountability Act of 1996 |

| | | |
|---|---|---|
| | privacy. *See Westinghouse Elec. Corp.,* 638 F.2d at 577. "[A]n individual has an interest in protecting against the dissemination" of private medical information, such as diagnoses, treatment, and medications. *Delie,* 257 F.3d at 317.<br><br>Exhibit R is only being produced to directly disprove Plaintiff's new and bewildering assertion that Patient X was not actually suffering from mental illness as alleged in Plaintiff's Response. In addition, Patient X's Behavior Plan demonstrates that program specialists, such as Plaintiff, were responsible for avoiding confrontation and power struggles with Patient X which contradicts Plaintiff's assertion that she was not responsible for "doing tasks" for Elwyn patients. As previously stated, Elwyn does not consider Exhibit R, or any documents on this list, to be relevant to the instant case but for Plaintiff's meritless arguments.<br><br>Accordingly, Exhibit R is the kind of information that the court will protect and disclosure will work serious injury on Patient X and Elwyn. Therefore, countervailing privacy interests exist here and Exhibit Q of Defendant's Reply Brief should be filed under seal. | ("HIPAA"), Pub.L. 104–191, 110 Stat. 1936. As such, Elwyn and Patient X have a important and compelling privacy interest in the protection and closure of Exhibit R. *See Delie,* 257 F.3d at 317.<br><br>Even with redactions, Exhibit R contains specific personal information which members of the public could use to determine the identity of Patient X which would cause substantial injury to his constitutionally protected rights. Therefore, filing Exhibit R under seal is narrowly tailored to protect Patient X's countervailing privacy interest. |
| Elwyn 153-164 | Defendant's Exhibit "S" contains the daily meeting notes of Elwyn employees in the New Beginnings program, which served Patient X and other mentally ill patients. These notes refer to patients by initials and list specific behaviors and medication concerns related to the | As described in Defendant's "Common Law Access" argument, Defendant's Exhibit S contains highly confidential and personal information pertaining to several Elwyn patients suffering from mental illnesses, including medications, treatment, and |

| | | |
|---|---|---|
| | patients, among other details. Similarly to the Elwyn's Exhibits P through R, redactions do not fully protect Elwyn patients from identification because of the surrounding details and identifying information. Allowing public access to Exhibit S would not only implicate Patient X's identity, but several Elwyn patients. Not one of Elwyn's patients are parties in this case and are protected by their constitutional right to privacy. *See Westinghouse Elec. Corp.,* 638 F.2d at 577.<br><br>Again, Elwyn produced these meeting notes in order to disprove Plaintiff's new allegations that Patient X was the only "difficult" patient to serve at Elwyn. The daily meeting notes demonstrate that several patients routinely refused medications and exhibited problematic behaviors because all of the New Beginnings program patients suffered from mental health issues and were "stepping down" from involuntary institutionalization.<br><br>Accordingly, the presumption of openness is overcome by the constitutionally protected privacy interests of Elwyn patients and Exhibit S of Defendant's Reply Brief should be filed under seal. | behavioral concerns. Elwyn's patients have a protected constitutional privacy interest in their own medical information and documents. In addition, Elwyn has a duty under the law to protect their patients' medical information from dissemination. Furthermore, such personal and confidential medical information and documents would not be accessible to the public under any other circumstances. As such, the privacy interest of Elwyn's patients is an overriding interest to the First Amendment right of access to civil trials.<br><br>Because redactions are not sufficient to prevent identification of Elwyn's patients and their medical information, closure of Exhibit S is essential to protect the constitutionally protected right of privacy of non-party Elwyn patients and is narrowly tailored to protect those privacy interests. Therefore, Defendant's Exhibit S should be filed under seal. |